IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS GUARANTEED STUDENT LOAN CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMUNITY CHECK CASHING, LLC,<br><br>    Defendant. | CV. NO. SA-13-CV-00390-DAE |

ORDER: (1) GRANTING MOTION FOR DEFAULT JUDGMENT;
(2) GRANTING REQUEST FOR MANDATORY INJUNCTION;
(3) REQUIRING ADDITIONAL EVIDENCE OF DAMAGES

Before the Court is the Motion for Default Judgment filed by Plaintiff Texas Guaranteed Student Loan Corporation ("TGSLC"). (Doc. # 10.) For the reasons that follow, the Court **GRANTS** TGSLC's Motion for Default Judgment; **GRANTS** TGSLC's request for a mandatory injunction; and **ORDERS** TGSLC to submit, within fourteen (14) days of the entry of this Order, additional evidence supporting its request for court costs and pre-judgment interest.

BACKGROUND

Because Defendant has failed to appear in this matter, the Court accepts as true the allegations in the Complaint ("Compl.") and the contents of the

1

supporting affidavits.   See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

TGSLC is a guaranty agency and has entered into a reinsurance agreement with the Secretary of Education (the "Secretary") in accordance with 20 U.S.C. § 1078(c).  (Compl. ¶ 8.)  Pursuant to its authority under this agreement and section 57.41(a) of the Texas Education Code, TGSLC guaranteed certain student loan promissory note(s) for Eric Botello ("Borrower").  (Id.)  Pursuant to its guarantees, TGSLC paid the note holder(s) and received an assignment of the note(s).  (Id.)  TGSLC also received reinsurance from the Secretary and undertook collection of the notes.  (Id.)

Borrower is employed by Defendant Community Check Cashing, LLC, where he earns at least the minimum wage ($7.25) per hour and works at least 40 hours per week.  (Id. ¶ 9.)  As part of its collection efforts, TGSLC instituted proceedings to withhold a portion of the Borrower's wages from Defendant.  (Id. ¶ 10.)  TGSLC performed all conditions necessary to issue a wage withholding order, which it issued on June 15, 2012, and amended on January 15, 2013.  (Id. ¶ 11; see also id. Ex. B.)  However, Defendant did not remit all required payments in accordance with the order.  (Id. ¶ 12.)

On August 3, 2012, TGSLC sent Defendant a subsequent notice

requesting compliance with the original order.  (Id.)  Nevertheless, Defendant failed and refused to fully comply with the withholding order.  (Id. ¶ 13.)

On May 8, 2013, TGSLC filed suit against Defendant, alleging that Defendant had violated 20 U.S.C. § 1095a "by refusing and failing to withhold the appropriate portion of the wages of the Borrower, its employee."  (Compl. ¶ 14.)  Defendant was properly served on May 14, 2013.  (Doc. # 10 ¶¶ 1–2; doc. # 6.)

Defendant has not: (1) filed an answer to the action, (2) made a motion pursuant to FRCP 12(b) or 56, or (3) taken any action that indicates an intent to defend the suit.  (Id. ¶ 4.)  Neither is Defendant, which is an LLC, a member of the military.  (Id. ¶ 3.)  Accordingly, on June 18, 2013, the Clerk properly made an Entry of Default against Defendant.  (Id. ¶ 5.)  On June 19, 2013 TGSLC filed the Motion for Default Judgment that is now before the Court (doc. # 10), requesting (1) that the Court enter a Default Judgment awarding it $4,342.29 in damages, $500.00 in attorney's fees, and court costs; and (2) that the Court issue a mandatory injunction requiring Defendant to withhold and remit fifteen percent of Borrower's disposable pay(or the amount required under 15 U.S.C. § 1673, if less) until Borrower's student loan indebtedness is paid in full or the Borrower ends his employment with Defendant, whichever occurs earlier (id. ¶ 2; Compl. ¶ 18). TGSLC served a copy of the Motion for Default Judgment upon Defendant by

certified mail on the same day.  (Doc. # 10 at 3.)  Still, Defendant has failed to respond or appear.

## LEGAL STANDARD

In the Fifth Circuit, there are three steps to obtaining a default judgment: (1) default by the defendant, (2) entry of default by the Clerk's office, and (3) entry of a default judgment by the district court.  N.Y. Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996).  A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure.  Id.  The clerk will enter default when default is established by an affidavit or otherwise.  Id.  After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on that default.  Id.

Even if a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right.  Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); accord Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1996).  "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989).  Generally, the entry of default judgment is committed to the discretion of the district court.  Mason v.

Lister, 562 F.2d 343, 345 (5th Cir. 1977). Among the factors a district court may consider when deciding whether to grant a default judgment are: (1) whether the default was caused by a good-faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default; (4) whether there are material issues of fact; (5) whether grounds for a default judgment are clearly established; and (6) whether the court would think it was obligated to set aside the default on the defendant's motion. Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998). The court may conduct a hearing or make referrals to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## DISCUSSION

I.   Default Judgment

All six of the factors the Fifth Circuit described in Lindsey weigh in favor of granting TGSLC a default judgment. First, Defendant has not filed a responsive pleading or otherwise appeared in this case and thus has not contested any of the allegations in the Complaint. Lindsey, 161 F.3d at 893; Nishimatsu, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Defendant was served with process through Nora Contreras, Manager-in-Charge, on May 14, 2013 (doc. # 6); Defendant did

not respond.  Defendant has given the court no reason to believe that its failure to respond was caused by a good-faith mistake or excusable neglect.

Second, Defendant's failure to respond to TGSLC's Complaint has brought the adversary process to a halt, prejudicing TGSLC's interest in pursuing the rights afforded it by law.  See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Cv. No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (explaining that the defendant's failure to respond prejudiced the plaintiff's rights).

Third, Defendant has been on notice of its duty to withhold payment for over a year and has had three months to answer or otherwise respond to TGSLC's Complaint, mitigating the harshness of a default judgment.  See id. (explaining that the harshness of a default judgment was mitigated because the defendant had over five months to respond and failed to do so).

The fourth and fifth factors also weigh in favor of granting Plaintiff default judgment, because Defendant, by defaulting, has conceded the accuracy of the allegations in the Complaint, and those allegations establish a violation of 20 U.S.C. § 1095a.  Title 20, United States Code, § 1095a states that

> the employer shall pay to the Secretary or the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the Secretary or the guaranty agency, as appropriate, may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that

> such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages . . . .

20 U.S.C. § 1095a.  "The language of the statute is mandatory; the only defense available is for the debtor to challenge the existence or the amount of debt."  Tex. Guaranteed Student Loan Corp. v. Arrangements, Inc., Cv. No. 3:07-CV-438-BH, 2009 WL 1919553, at *2 (N.D. Tex. July 2, 2009) (citing Educ. Credit Mgmt. Corp. v. Cent. Equip. Co., 477 F. Supp. 2d 788, 792 (E.D. Ky. 2007)).  Thus, employers that choose to ignore a withholding order are liable for not only the ungarnished wages but also the guaranty agency's attorneys' fees and costs in pursuing these wages.

      TGSLC alleges that it is a guaranty agency and has entered into a reinsurance agreement with the Secretary of Education in accordance with 20 U.S.C. § 1078(c).  (Compl. ¶ 8.)  Further, TGSLC asserts that it guaranteed certain student loan promissory note(s) for the Borrower.  (Id.)  TGSLC alleges that Borrower is employed by Defendant, that TGSLC instituted the appropriate proceedings to withhold a portion of Borrower's wages from Defendant, and that on June 15, 2012, it issued a wage withholding order.  (Id. ¶ 11.)  However, Defendant failed to remit all required payments in accordance with the order, leading TGSLC to send a subsequent notice requesting compliance with the

original order.  (Id. ¶ 12.) Again, however, Defendant failed to comply with the withholding order.  These allegations, taken as true, clearly establish a violation of 20 U.S.C. § 1095a.

Finally, the sixth Lindsey factor asks whether the court would think it was obligated to set aside the default on Plaintiff's motion.  See 161 F.3d at 893. Based on the facts known to the Court at this time, there is no reason to think that the Court would be obligated to set aside the default if Defendant later challenged it. Therefore, all six Lindsey factors weigh in favor of granting default judgment to TGSLC.

II.   Damages

A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but it does not establish the amount of damages.  United States v. Shipco Gen. Inc., 814 F.2d 1011, 1014 (5th Cir. 1987).  Ordinarily, a court should not award damages without a hearing.  United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979).  However, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial to the court, a hearing is unnecessary.  James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).   While some of the damages requested can be determined with

certainty by reference to the pleadings and supporting documents, TGSLC, for the reasons that follow, must submit additional documentation before the Court can determine the proper amount of court costs and pre-judgment interest.

    A.    <u>Wage Garnishment</u>

As noted above, 20 U.S.C. § 1095a clearly states that "the guaranty agency, as appropriate, may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee . . . ." 20 U.S.C. § 1095a(6). In his sworn declaration, Richard Farias, the AWG Team Leader for TGSLC, attests that the wage withholding order required Defendant to withhold and forward fifteen percent of Borrower's take-home pay. (Doc. # 10, Ex. A.) Borrower earned $30,148 in take-home pay from the date that the wage withholding order was issued (June 15, 2012) through June 19, 2013. (<u>Id.</u>) Therefore, $4,342.29 represents the amount that Defendant should have withheld and forwarded. (<u>Id.</u>) Thus, because Defendant failed to withhold any of Borrower's wages, the Court finds Defendant liable for the full amount of $4,342.29.

    B.    <u>Mandatory Injunction Requiring Garnishment of Wages</u>

TGSLC seeks a mandatory injunction requiring Defendant to withhold and remit 15% of Borrower's disposable pay (or the amount required

under 15 U.S.C. § 1673, if less) until Borrower's student loan indebtedness is paid in full or Borrower ends any employment with Defendant, whichever occurs earlier. (Compl. ¶ 17.) To obtain permanent injunctive relief,

> a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

ITT Educ. Servs., Inc. v. Arce, 533 F.3d 342, 347 (5th Cir. 2008) (citing eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "A permanent injunction is generally only granted where . . . a full trial on the merits has occurred." ITT Educ. Servs., Inc., 533 F.3d at 347; Univ. of Tex. v. Camenisch, 451 U.S. 390, 396 (1981). In the instant case, however, Defendant has prevented a full trial on the merits by failing to respond.

With regards to the first and second elements described in Arce, the Court notes that injunctive relief generally is not appropriate to secure post-judgment legal relief in the form of money damages. Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 560 (5th Cir. 1987)). However, an "injury is irreparable and there is no adequate remedy at law [if] a multiplicity of suits would be required to gain relief." Tex. Guaranteed Student Loan Corp., 2009 WL 1919553 at *3 (citing Dixon, 835 F.2d at 560). Here, in order to recover all the

...

money it is owed, TGSLC would have to file a new suit for each additional withholding payment that Defendant failed to remit.  This presents the possibility of dozens of additional suits if Defendant fails to remit each month.  Therefore, because Plaintiff has suffered an irreparable injury, and because there is no adequate remedy at law due to the need for a multiplicity of suits, Plaintiff has satisfied the first two elements of obtaining permanent injunctive relief.

The third element requires the Court to consider the balance of hardships between TGSLC and Defendant to determine if a remedy in equity is warranted.  eBay Inc., 547 U.S. at 391.  Here, an injunction would merely require Defendant to comply with the applicable statute, 20 U.S.C. § 1095a, by withholding money from a third party, Borrower.  Requiring Defendant to withhold money from a third party does not penalize or burden the Defendant; it merely burdens the third party.  Moreover, as noted above, denying an injunction would burden TGSLC, which would have to initiate a new lawsuit every time Defendant failed to comply with 20 U.S.C. § 1095a in order to recover the $91,213.28 still outstanding.

Lastly, "public policy strongly favors repayment of student loans to insure that funds continue to be available to help future students."  Tex. Guaranteed Student Loan Corp., 2009 WL 1919553, at *4 (citing In re Shaffer, 237

B.R. 617, 620 (Bankr. N.D. Tex. 1999)).

Accordingly, TGSLC has established the four elements required to obtain injunctive relief.

C.     Attorneys' Fees and Costs of Court

20 U.S.C. § 1095a provides for the recovery of reasonable attorney's fees and costs of court. See 20 U.S.C. § 1095a(6) (providing that a "guaranty agency . . . may sue the employer . . . [for] attorney's fees, costs, and, in the court's discretion, punitive damages"). In this case, TGSLC's counsel kept track of all hours worked, and those records indicate that, as of the date of drafting the Motion for Default Judgment, counsel had expended 2.25 hours on the case. (Doc. # 10; Ex. B.) TGSLC's counsel charged $500.00 for his services on this case. (Id.) In a sworn affidavit, counsel attested to the reasonableness of the fee and stated that the fee is one "customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the nature of the controversy, the time limitations imposed, the results obtained compared with results in similar cases, and the nature and length of [his] relationship with the plaintiff." (Id.) The Court finds that $500.00 is a reasonable amount of attorney's fees in connection with Counsel's work on this case and that Defendant is liable to TGSLC for that amount.

TGSLC also requests reimbursement for court costs. (Compl. ¶ 18.) TGSLC is undoubtedly entitled to court costs under 20 U.S.C. § 1095a. See 20 U.S.C. § 1095a ("[T]he guaranty agency . . . may sue the employer . . . to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages . . . .") (emphasis added). However, TGSLC did not state—in the Complaint, the Motion for Default Judgment, or the attached affidavits—the amount of court costs requested. TGSLC's proposed order, Doc. # 10-1, requests that the Court order Defendant to pay $490.00 in court costs, but the proposed order is not part of the Complaint or a sworn affidavit. Neither does the proposed order itemize the court costs. Because the Court cannot determine the amount of court costs "with certainty by reference to the pleadings and supporting documents," James, 6 F.3d at 310, the Court **ORDERS** TGSLC to submit, within fourteen (14) days of the entry of this Order, evidence supporting its request for court costs. See Santana v. First Am. Solutions, LLC, 2011 WL 3666591, at *4 (W.D. Tex. June 27, 2011) (denying without prejudice request for court costs "for the simple fact that Plaintiff has failed to specify those costs in its Motion or Affidavit").

D.	Pre-judgment Interest

As a general rule, "[p]rejudgment interest should apply to all past injuries, including past emotional injuries." Thomas v. Tex. Dep't of Crim. Justice, 297 F.3d 361, 372 (5th Cir. 2002). "Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." Id. Where, as here, no federal statute governing prejudgment interest exists, "courts should look to state law for guidance on what pre-judgment interest rate is appropriate." In re Borschow, 454 B.R. 374, 403 (Bankr. S.D. Tex. 2011) (citing Hansen v. Cont'l Ins. Co., 940 F.2d 971, 984–85 (5th Cir. 1991), abrogated on other grounds by Koehler v. Aetna Health Inc., 683 F.3d 182 (5th Cir. 2012); United States ex rel. Canion v. Randall & Blake, 817 F.2d 1188, 1193 (5th Cir. 1987) (explaining that where federal law is "silent on the issue" of pre-judgment interest, "state law is an appropriate source of guidance").

Under Texas law, with certain exceptions, "pre-judgment interest accrues at the postjudgment rate for judgments issued by Texas courts, [which is] set by the consumer credit commissioner." Compass Bank v. Villarreal, Cv. No. L-10-8, 2011 WL 3515913, at *7 (S.D. Tex. Aug. 10, 2011) (citing Tex. Fin. Code § 304.003; Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 532 (Tex. 1998)); see also Red Hot Enterprises, LLC v. Yellow Book Sales

14

and Dist. Co., Inc., No. 04-11-00686-CV, 2012 WL 3025914, at *3 (Tex. App. July 25, 2012) ("Although section 304.003 expressly applies to post-judgment interest rates, pre-judgment interest is computed at the same statutory rate."). That rate is presently 5%.[1] Pre-judgment interest is computed as simple interest. Kenneco, 962 S.W.2d at 531. It is "calculated up to the date of judgment and is then included as part of the final judgment." Dallas Cnty. v. Crestview Corners Car Wash, 370 S.W.3d 25, 50 (Tex. App. 2012) (citing Sisters of Charity of Incarnate Word v. Dunsmoor, 832 S.W.2d 112, 119 (Tex. App. 1992)). "Postjudgment interest then begins to accrue on the entire amount of the final judgment (including court costs and prejudgment interest) from the date of judgment until paid." Id. (citing Tex. Fin. Code § 304.003(a)).

Again, "state law is not binding but merely provides guidance[;] it is within the discretion of the district court to select an equitable rate of prejudgment interest." Id. (citing Dallas-Fort Worth Reg'l Airport Bd. v. Combustion Equip. Assocs., Inc., 623 F.2d 1032, 1041 (5th Cir. 1980) (noting that Texas case law permits courts at their discretion to award equitable prejudgment interest)). However, the Court finds that 5% is an equitable rate of pre-judgment interest and

---

1 See "Interest Rates," Office of Consumer Credit Comm'r, http://www.occc.state.tx.us/pages/int_rates/Index.html (last accessed Aug. 9, 2013).

will exercise its discretion to award pre-judgment interest in that amount, to be calculated as simple interest.  See First Horizon Home Loans v. Security Mortg. Corp., Cv. No. 3:09-CV-2182-B ECF, 2010 WL 3659908, at *2 (N.D. Tex. Sept. 16, 2010) (noting that "under both federal and state law prejudgment interest is left to the Court's determination" and following "the prejudgment interest rules described in the Texas Finance Code" to award 5% interest).

      While TGSLC is entitled to pre-judgment interest (1) at a rate of 5% per annum (2) on the amount Defendant should have paid to TGSLC from the date first failed to pay TGSLC through the day preceding final judgment, the Court does not have sufficient information to calculate that amount at this time.  TGSLC has stated only that $4,342.29 is the amount currently outstanding; however, Defendant has not owed TGSLC $4,342.29 during the entire period of delinquency, so it would be inappropriate to calculate pre-judgment interest at 5% per annum on that amount.  Because the Court cannot determine the amount of pre-judgment interest "with certainty by reference to the pleadings and supporting documents," James, 6 F.3d at 310, the Court **ORDERS** TGSLC to submit, within fourteen (14) days of the entry of this Order, evidence supporting its request for pre-judgment interest.

    E.    Post-judgment Interest

      An award of post-judgment interest is mandatory under 28 U.S.C.

§ 1961 and is awarded as a matter of course.  See Meaux Surface Protection, Inc. v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010); Reeves v. Int'l Tel. & Tel. Corp., 705 F.2d 750, 751 (5th Cir. 1983).  Such interest shall be calculated from the date of the entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of judgment—in this case, 0.11%. 28 U.S.C. § 1961(a).

CONCLUSION

For the foregoing reasons, the Court **GRANTS** TGSLC's Motion for Default Judgment.  The Court leaves open the issue of the total damages recoverable by TGSLC pending TGSLC's submission of relevant evidence regarding court costs and pre-judgment interest.  TGSLC is **ORDERED** to provide such evidence to the Court within fourteen (14) days of the entry of this Order, at which point the Court will enter final judgment.  Failure to submit such evidence will result in the denial of an award of court costs or pre-judgment interest when the Court enters final judgment.

**IT IS FURTHER ORDERED** that TGSLC's request for a mandatory injunction requiring Defendant to withhold 15% of Borrower's disposable pay (or the amount required under 15 U.S.C. § 1673, if less), until

Borrower's student loan indebtedness is paid in full or Borrower ends any employment with Defendant, whichever occurs earlier, is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 14, 2013.

_____
David Alan Ezra
Senior United States District Judge